PATRICK H. GILHOOLY, Respondent, *against* LUCIUS HART AND CHARLES FANNING, Appellants.

(Decided December 2d, 1878.)

Where a partnership agreement provided that the defendants, who were partners therein, should contribute a certain amount of money as a " working capital," and that such capital should draw interest at seven per cent., and during the continuance of the partnership business more capital was needed, and the defendants advanced it on the promise of their co-partner, that whatever money they put in they should get back with interest,—*Held*, that on an accounting at the suit of their co-partner's assignee they should be allowed interest on the additional money so advanced, as well as on the amount originally contributed.

Where a partnership agreement does not provide that a partner shall receive commissions for making sales in the business, a charge for making such sales will not be allowed upon such an accounting.

APPEAL by the defendants from a judgment of this court, entered upon a report in favor of the plaintiff by Edward S. Dakin, a referee, to whom it had been referred to hear and determine the issues in the action.

The action was brought by Patrick H. Gilhooly, the assignee of Leonee De Metz, against Lucius Hart and Charles Fanning, who were partners under the firm name of Lucius Hart & Co., for an accounting.

The complaint alleged that De Metz, Lucius Hart & Co. and one Hill agreed, in writing, to enter into the business of the manufacture of spelter, and that by the terms of the agreement Lucius Hart & Co. were to invest $4500 as a working capital in the business, Hill $1500, and that De Metz was to contribute a patent which he owned for the manufacture of spelter. By the terms of the agreement it was further provided, that De Metz was to give his whole time and attention to the manufacture, and to have a salary of $1000 per year and one-fifth of the net profits. Lucius Hart & Co. were to employ Hill at the same salary, and Hill

was to have one-fifth of the net profits, and was to keep the accounts of the business, to receive and deliver material, and to find purchasers. By the agreement it was provided that the "working capital" should draw interest at the rate of seven per cent. per annum, and that no profits should be divided until the interest and all the cost and expenses of the business should have been paid. The complaint alleged further that at the termination of the business an account was rendered De Metz by Lucius Hart & Co., by which it appeared that there was due him the sum of $323, which was paid him; that he was ignorant of the true state of the accounts at the time that account was rendered, and that the account was untrue and contains improper and illegal charges.

The answer admitted the agreement as alleged in the complaint, and alleged the correctness of the account as rendered.

The two principal items contested were a charge of Lucius Hart & Co. of $933 31 as commissions for sales of the spelter, and one of $494 95, interest on $28,601 23, money advanced in the business by that firm. After the evidence was in, the defendant's counsel moved to amend the answer to conform to the proofs in the case by adding allegations, that after the making of the agreement alleged in the complaint it was further agreed between the parties that Lucius Hart & Co. should advance money beyond the sum of $4500; that the further advances should draw interest as provided in respect to that sum; and that said firm should have the charge of selling the spelter, and should receive therefor a commission of three per cent. upon the amount of sales. The referee denied this motion and disallowed the items of interest and commissions. The evidence as to the item of interest on the additional advances is stated in the opinion.

*James E. Chandler*, for appellants.

*Winsor & Marsh*, for respondent.

VAN HOESEN, J.—The defendants, who are the appel-

lants, found their application for the reversal of the judgment upon two alleged errors of the referee—the first being his refusal to allow the defendants interest ; and the second, his refusal to allow them commissions in the adjustment of the accounts in a business adventure, in which they, the plaintiff's assignor, De Metz, and one Hill was the parties concerned. It appeared that in March, 1875, the defendants, who comprised the firm of Lucius Hart & Company, engaged with one De Metz and one Hill in the manufacture of spelter under De Metz's patent. They were to furnish $4500 cash, as working capital, to pay De Metz a salary of $1000 per year, and to employ Aaron Hill at a salary of $1000 per year. Hill agreed to invest $1500 in the working capital, and to devote his whole time to the business, and was to receive one-fifth the net profits. De Metz agreed to give his whole time to the business, to give to Lucius Hart & Co. the exclusive use of his patent, and to assign to them the patent as a security for the performance by him of his contract. De Metz was to have furthermore, as a consideration for the use of his patent, one-fifth of the net profits of the business. It was agreed that the working capital invested should draw interest at seven per cent. On the 5th day of September following the factory was destroyed, and the business was abandoned by common consent. Lucius Hart & Company rendered to De Metz an account, in which were charged the two items objected to, one for interest and the other for commissions. It appeared upon the trial that Hart & Company had advanced for use in the business more than $28,000, upon which they claimed to be allowed interest, and that they had sold the spelter refined at the factory to the amount of more than $31,000, for which they claimed a commission of 3 per cent. The referee disallowed both items.

The appellants found their claim to interest first, upon the ground that there was an express agreement to pay interest, and, secondly, on the ground that under the circumstances such an agreement will be implied by law. Whilst there are cases in which a partner may be permitted to

charge interest upon his advances for the business of the firm, the general rule does not allow interest to a partner upon his loans to the partnership. There is nothing in this case to take it out of the ordinary rule. The advances were not contributions to the common stock, but loans. If the money had been borrowed from a stranger, interest would, of course, be payable, but where a partner makes the advances the courts have said that he was no more entitled to interest than a partner who excels his associates in industry and judgment is entitled to compensation for his labor. If he seeks an allowance for his superior abilities, or for the use of his money, he must bargain for it. (*Lee* v. *Lashbrooke*, 8 Dana, [Ky.] 214.)

*Johnson* v. *Hartshorne* (52 N. Y. 178), though not in point, does not, as I understand it, lay down a different doctrine, for that case merely determined the right to interest where a surviving partner had tortiously converted to his own use the property of his late firm. Whilst I see no reason, therefore, for saying that the law implies an agreement for the payment to the defendants of interest upon their advances, I think there was evidence upon which the referee should have found that De Metz expressly agreed to pay such interest. Though De Metz, in one part of his testimony, swears that he never knew that the capital of $4500 had been exhausted, yet, he swears in another part that the works were stopped for want of money, and that he had several conversations with Fanning, one of the defendants, upon the necessity of having more money, and was told by Fanning that Lucius Hart & Co. would advance more. De Metz further swears that when the defendants presented to him their account, in which the interest item was charged, he made no objection to that, but did object to the item for commissions, and that in a written communication he singled out the latter item as the only one in the account which he would not allow. On the other hand, Fanning, one of the defendants, swears that when told by him that Lucius Hart & Co. would advance money in excess of their contribution of $4500, De Metz said: " Whatever money

you put in you will get back with interest." This statement of Fanning was nowhere expressly contradicted, though De Metz said, in answer to a general question, that he made no agreement except the written one. The question and the answer, taken together, cannot be considered a satisfactory denial of Fanning's clear and positive statement of De Metz's promise. The works were stopped for want of money ; the defendants had furnished all they agreed to contribute, and were under no obligation to make any further advances, and under these circumstances De Metz promised to allow them interest if they would supply the needed funds. They acted on that assurance, and De Metz, when the account is presented to him, found no fault with the charge of interest. It seems to me this is a stronger case than that of *Lloyd* v. *Carrier* (2 Lans. 364), in which the court allowed interest to a partner. In that case, the partnership agreement made no provision for the supply of capital by either partner, but one of the firm made advances for the purpose of the business. The books contained charges for interest. Carrier examined the accounts for the purpose of settling them, and made no objection to the items charged for interest. It was held that the accounts, including the interest items, were accounts stated. I think the referee should have allowed the items for interest. The items for commissions were properly disallowed. The proof utterly failed to show any agreement for the payment of commissions to the defendant. De Metz's conversation with Hill and with Fanning fell far short of proving any understanding that the defendants should have three per cent., or any other rate, for making sales. The claim for commissions is unreasonable and unfair, and was stoutly disputed by De Metz as soon as he discovered it.

For the error of the referee in disallowing the item of interest the judgment should be reversed and a new trial ordered, with costs to the defendants to abide the event (8 Hun, 524).

CHARLES P. DALY, Ch. J., concurred.

Judgment reversed and new trial ordered, costs to abide event.