Bussell G. Hunt, J.
The defendant moves, pursuant to CPLB 3211 (subd. [a]), before answer, to dismiss the complaint herein upon the grounds that this court is without jurisdiction of the action and that the plaintiff does not have legal capacity to sue.
The action is for a judgment declaring the rights of the parties respecting liability for interest upon funds appropriated by the State to the Superintendent of Public Works for the construction of the Thruway, a public highway (Highway Law, art. 12-A; “ the New York state section of a national network of Blue Star memorial highways ”, § 346-a).
The matter of plaintiff’s liability is embraced, the defendant contends, within the provisions of subdivision 2 of section 357 *1058 of the Public Authorities Law, wherein he is required to enter into an agreement with the plaintiff for the reimbursement of the appropriated funds upon terms which include the payment of interest. The plaintiff’s stand, on the other hand, is that under the facts peculiar to the total situation herein the defendant’s position is not justifiable, and, his insistence upon the payment of interest contravenes the statute and is in excess of his authority and power.
The plaintiff believes it is compelled to take the initiative in bringing the matter to a head because of precautionary advice received from bond counsel respecting possible legal liability for the payment of interest. It is for the benefit of the State that plaintiff’s bonds should continue to enjoy a high rating, for the public sale of' such bonds is the direct and immediate means by which the capital construction fund of the State will obtain the refund of the cost of constructing the Thruway. The State’s interest in this respect is evidenced in section 6 of article X of the New York Constitution. The use of the declaratory judgment is necessary in this case to settle a dispute involving the meaning or application of a statute. The defendant has failed to take action which would dispose of the issue, and so long as it remains unresolved, a possible unprovided for and unascertainable liability, involving millions of dollars hangs suspended over the marketability in the future of the plaintiff’s bonds (see Town of Ohio v. People, 264 App. Div. 220; New York Operators v. State Liq. Auth., 285 N. Y. 272; Bunis v. Conway, 17 A D 2d 207, mot. for lv. to app. dsmd., 12 N Y 2d 882, app. dsmd. 13 N Y 2d 1143). The plaintiff has the necessary power to institute and maintain the action (Public Authorities Law, § 354; see Matter of Plumbing Assn. v. New York State Thruway Auth., 5 N Y 2d 420). The attack upon the complaint for insufficiency brings into play the familiar rule that the pleading is to be liberally construed and the facts alleged and the inferences that may be fairly drawn are deemed admitted (CPLR 3026; St. Regis Tribe v. State of New York, 5 N Y 2d 24).
The inability of the parties to agree is reminiscent of the difficulties they experienced in arriving at a dollar settlement of the unliquidated sum contemplated by the “ definite policy as early as 1952, or perhaps earlier, that the Thruway should only assume costs for construction that inured solely for the benefit of the Thruway, and not for the construction costs for work that inured to benefit of the State highway system, or other State facilities ” (New York State Thruway v. State of New York, 50 Misc. 2d 957, 962 (Foster, J.), affd. 28 A D 2d 607). The parties’ agreement of February 27, 1963, is expressive of *1059 the disagreement existing between the Budget Director, the Superintendent of Public Works and the Authority over the allocation of costs. That disagreement resulted in an enabling act (L. 1964, ch. 669, eft. April 22, 1964) which authorized the Court of Claims 1 ‘ to hear and report on the claim of the Authority for an offset or credit, against whatever balance may be due the State on moneys advanced, for expenditures charged to the Authority for improvements and additions to the State highway, parkway and canal systems and other State facilities made by, or at the direction or request of, any department or agency of the State for the sole benefit of the State and not required for Thruway purposes ” (Thruway case, p. 958). It is significant that the principal amounts ‘ ‘ were not advanced directly as a loan to the Authority 'but appropriated to the Department of Public Works ” (p. 961) which “ had complete control of the design and of the construction” to 1954 (Dr. Tallamy occupied the dual position of Superintendent of Public Works and Chairman of the Authority from 1950 to 1955) “ and even after 1954 the work of finally completing the Thruway remained under the supervision of the Department of Public Works ” (p. 962). This, of course, is compatible with article 12-A of the Highway Law. The amount payable by the plaintiff will become liquidated after the last appeal will have been decided and become final.
On several occasions, over a period of years, and while the parties (including their predecessor representatives) were attempting to perfect the agreement contemplated by subdivision 2 of section 357 of the Public Authorities Law, there was discussed the question of the payment of interest on the appropriations. These culminated in the agreement of March 1, 1965. Therein it is recognized that a bona fide question existed which the parties agreed ought to be finally settled by a submission on an agreed state of facts. An agreement on the facts was not forthcoming. It is accepted, therefore, that any prior agreements by the plaintiff to pay interest have been superseded by the agreement of March 1, 1965.
While the statute last cited refers to the amount as a debt, it is to be understood, in accordance with the facts, that the term is used in a bookkeeping sense and not as representing a sum loaned with an obligation to repay. The principal amount was not, as Judge Foster found, “ advanced directly as a loan to the Authority but appropriated to the Department of Public Works * * * Any expenditures from the appropriation were to be repaid to the State in the manner provided by subdivision 2 of section 357 of the Public Authorities Law ” (Thru *1060 way case, p. 961). Throughout the act creating the authority-emphasis is placed upon the governmental function assigned to it of operating and maintaining a public highway with title to all real property taken and held in the name of the State (and upon the termination of its existence all of its other rights and properties pass to the State). This is consistent with the genesis of the Thruway as a public highway to be paid for by the State when, in 1942, the Superintendent of Public Works was authorized to design and construct it (L. 1942, ch. 914). Because of the slow pace at which construction proceeded— being dependent upon annual appropriations — investigation into the practicability of a self-liquidating project resulted in the creation in 1950 of the plaintiff as a public corporation with the authority to issue bonds guaranteed by the State for the reimbursement of the State for the cost of the highway. The act creating the plaintiff imposed upon it the function of obtaining funds from tolls so as to return to the State the amounts it had spent in the work of construction. The plaintiff did not receive loans and no statute, special or general — either before or after the plaintiff was created — authorized, required or compelled the collection of interest upon the unliquidated amount (Western Transp. & Coal Co. v. Kelderhouse, 87 N. Y. 430, 437; General Obligations Law, § 5-501; 32 N. Y. Jur., Interest and Usury, § 5). The defendant is acting in excess of his powers and beyond the requirements of the statute in seeking to compel the payment of interest. While interest-free appropriations were made directly to certain public authorities, referred to in exhibits annexed to the complaint, it is significant that appropriations were not made directly to the plaintiff and this, too, is consistent with article 12-A of the Highway Law, evidencing the policy that the highway was a State project and solely in the hands of the Superintendent of Public Works and that the intervention of the plaintiff was a device to return from tolls to the capital construction fund the moneys spent by the State. The defendant’s motion is denied, without costs.